Samuels, J.
On the 12th of November 1841 Samuel Findley and Elizabeth S. Haraest entered into an agreement of that date, in writing and under seal, reciting in effect that a marriage was shortly intended to be had and solemnized, by the permission of Grod, between the parties; declaring, amongst other things, *435 that it was distinctly understood and agreed, that in the event of said Samuel Findley departing this life first, or before the said Elizabeth, that said Findley bound his heirs, executors, &c. to pay to the said Elizabeth the sum of ten hundred dollars : say about one-half in cash, and the other half in property at a fair valuation price. But if said Findley should live five years or more after the date of their marriage, or the said Elizabeth have one or more children to said Findley, and living at the death of said Findley; in either or both of these last events - happening, then Findley bound his heirs, executors, &c. to pay said Elizabeth the further sum of ten hundred dollars, payable as before stated, within six months after Findley’s decease, in money, say about one-half, and the other half in household and other property, as it might suit equally for his estate to pay out, and her to receive; which sum or sums were to be considered as in bar of and in full compensation for said Elizabeth’s dower; and that said parties agreed that Findley would only have the right to exercise authority over the rents and profits of said Elizabeth’s real estate, and the same to use so long as they both lived. This agreement was duly recorded ; and immediately thereafter the marriage was consummated. Findley having lived more than five years .after the marriage, departed this life May 5th, 1847, leaving his wife to survive.
Findley died leaving a will, which had been written a short time before the marriage, but which contains no reference to that event. Three several codicils are annexed to the will, all written after the marriage. One of these codicils gave to the appellee the personal property she had brought to her husband at the marriage ; and in case the testator and his wife should die before Margaret the daughter of the wife, then this daughter was to have and enjoy the property. Another of the codicils gave to the appellee a portion of a tract *436 of land which testator had purchased of J. Bushong, as ^er dower right for and during the term of her life. The will and the codicils annexed were admitted to probat. On the 23d of August 1849 Elizabeth S. Findley, in conformity with the terms of the statute, by deed under her hand and seal, declared that she would not take or accept the provision made for her by the will of Samuel Findley, or any part thereof, and that she did thereby renounce all benefit she might claim under said will; and that she elected to take such portion of the estate of Samuel Findley, in virtue of her right as widow and relict, as the law of the land allowed.
The appellee Elizabeth S. Findley thereafter, by bill and amended bill, convened the executors- and devisees of Samuel Findley before the Circuit court of Augusta county. The bill alleged the facts above stated, and some others not material to be considered ; and the prayer of the appellee is, that she may have a decree for her distributive share in the personal estate of her late husband; that she may have a day in court to elect between the provisions of the jointure settlement and her dower in the real estate of Samuel Findley; and for general relief.
The answer of the defendants admitted the marriage and other allegations of the bill, so far as they were founded on written evidence. They question the right of complainant to distribution of her husband’s personal estate, alleging that upon the true construction of the marriage contract standing alone, her claim to distribution is barred; or if this be not so, yet, construing that contract by the light of surrounding circumstances, as shown by extrinsic proof, they insist her claim is barred.
The case thus presented brings before the court the questions, What rights complainant acquired under the marriage contract ? What rights she gave up by that *437 contract ? What rights she took tinder the will of her husband ? To what extent her rights under the will are affected by her renunciation of its provisions ?
It was properly conceded in the argument here that parties, when about to contract the relation of husband and wife, may, by agreement, vary or wholly waive the rights of property which would otherwise result from the marriage. See Faulkner v. Faulkner’s ex’ors, 3 Leigh 255; Charles v. Charles, 8 Gratt. 486; 1 Lom. Dig. 423-4.
By the terms of the marriage contract in this case, the appellee was to have one thousand dollars in the event of surviving her husband; and the like sum payable six months after Findley’s death, if he should live five years or more, and then die leaving the appellee surviving. The husband lived more than five years, and at his death left the appellee surviving, who thus became entitled to the two sums of one thousand dollars each, payable at the times and in the mode provided in the agreement.
The question, what rights the appellee gave up by the contract, was argued with great earnestness by the counsel. On thé part of the appellants it was insisted, that she had given up not only her right of dower, but her claim to a distributive share of the personal estate. On the part of the appellee it was insisted, that the right of dower only was intercepted, and that the claim to a distributive share remained untouched.
It may be laid down as a rule of construction established beyond question, that a written contract must be construed by the terms used therein if plain and intelligible; that extrinsic proof is not admissible for the purpose of adding to, or detracting from, or explaining, or in anywise varying the plain meaning of the instrument itself; that extrinsic proof may be heard only for the purpose of explaining a latent ambiguity or of applying ambiguous words to their pro *438 per subject matter. It may be further laid down as equally well settled, that if parties in making a contract, use words of definite legal signification, they must be understood as using such words in their definite legal sense. For these positions a large number of authorities were cited by the appellee’s counsel; amongst them the cases of Tabb v. Archer, 3 Hen. & Munf. 399; Gatewood v. Burrus, 3 Call 194; McMahon v. Spangler, 4 Rand. 51; Bowyer v. Martin & al. 6 Rand. 525; Ball's devisees v. Ball's ex'ors, 3 Munf. 279. Wigram, in his treaties on the construction of wills, lays down certain rules, some of which are equally applicable to written contracts. The second of these rules is in these words: “ When there is nothing in the context of a will from which it is apparent that a testator has used the words in which he has expressed himself in any other than their strict and primary sense, and when his words so interpreted, are sensible with reference to extrinsic circumstances, it is an inflexible rule of construction, that the words of the will shall be interpreted in their strict and primary sense, and in no other, although they may be capable of some popular or secondary interpretation; and although the most conclusive evidence of intention to use them in such popular or secondary sense be tendered.
Applying these rules to the language of the contract, “ which sum or sums is to be considered as in lieu of and in full compensation for the said Elizabeth's dower," we must hold that the appellee’s right of dower only, properly so called, is barred. That word means an entirely different thing from distributive share. Dower is a widow’s life estate in land; a widow’s distributive share is a third part of the slaves for life, and of the other personal estate absolutely. The statutes regulating these different subjects, call them by different names; and prescribe different rules and incidents *439 about them. If we suppose for a moment, that the parties intended to bar the right of dower only, what mode of expression more appropriate for the purpose than that used by them ?
Again: If we suppose that they intended to leave her right in the personal estate untouched, the readiest mode of attaining their purpose was to say nothing about it in the contract. I am of opinion the appellee’s claim to distribution is not intercepted by the antenuptial contract between herself and her late husband. See Stegall v. Stegall's adm'r, 2 Brock. R. 256; Ellmaker v. Ellmaker, 4 Watts’ R. 89.
The question next in order is, What effect the will of Samuel Findley had upon the rights of the appellee his widow to distribution of the personal estate ? This question has occurred in many cases under the law as it stood at the death of the testator; and in every case it has been decided that unless the widow renounce the provision made for her by the will, she could claim nothing more than was given by it. The appellee having renounced the will, is entitled to a distributive share of the personal estate of her husband; her dower in the real estate is barred by the contract entered into before the marriage.
The appellee cannot assert her paramount distribution against the will, and also claim t' sion, or any part of it, made for her by Having made her election to take the first, give up the last to indemnify the parties who are dis appointed by her election. Mitchells v. Johnsons, 6 Leigh 461; McReynolds v. Counts & als. 9 Gratt. 242; The appellee should account for the value of her interest under the will, in the personal estate brought by her to her husband. She should also give up her life estate in that portion of the land bought of Bushong and devised to her by her husband, and account for the rents and profits thereof, if any, received by her, or *440 lost by her want of diligence, if any were so lost. This property and its profits‘ should go to indemnify the legatees who are disappointed by the widow’s renunciation.
An error appears on the face of the account taken in the court below for ascertaining the balance.to be distributed. That balance will be what remains after paying debts and charges. The amount yet due the appellee on the marriage contract is a debt of Findley’s estate, and should be paid before the balance can be properly ascertained.
Without deciding whether the appellee was bound as security for her son William M. Harnest, in the bond amounting to two hundred and fifty-three dollars and fifty-eight cents, yet as she voluntarily paid that bond as well as another bond given by William M. Harnest to Samuel Findley, amounting to fifty-eight dollars and eighty-seven cents, these sums should be charged against her in the account of money due her under the marriage contract.*
The other judges concurred in the opinion of Samuels, J.
Decree reversed.

 Note by the Reporter.—These bonds had been executed by her son William M. Harnest to her husband, and she executed the first as his security. After the death of her husband she received these bonds from the executors in part payment of the amount due under the marriage ■agreement.; -and.gave .a receipt for the amount.